# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 16-923V
Filed: April 12, 2019

| | | |
|---|---|---|
| * * * * * * * * * * * * * | * | |
| STEPHANIE NWALA and | * | |
| EMMANUEL NWALA, as parents and | * | UNPUBLISHED |
| natural guardians of C.N., a minor, | * | |
| | * | |
| Petitioner, | * | Motion for Reconsideration; |
| | * | Vaccine Rule 10(e); Expert |
| v. | * | Rate; Decision on Attorneys' Fees |
| | * | and Costs |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * | * | |

*Diana Stadelnikas, Esq.*, Maglio Christopher & Toale, PA, Sarasota, FL, for petitioner.
*Gabrielle Fielding, Esq.*, US Department of Justice, Washington, DC, for respondent.

## RULING ON MOTION FOR RECONSIDERATION AND DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On March 8, 2019, petitioners filed a Motion for Reconsideration of the undersigned's Decision on Attorneys' Fees and Costs, issued on February 15, 2019. Motion, ECF No. 49. Specifically, petitioners requested that the undersigned reconsider her decision to decrease the award granted to petitioner's expert, Dr. Joseph Rizzo. *Id.* at 1. Upon review of Dr. Rizzo's qualifications, the quality of his work in this matter, and the quick resolution of this case following the filing of his expert report, petitioners' request is GRANTED.

---

[1] Although this Decision has been formally designated "unpublished," it will nevertheless be posted on the Court of Federal Claims's website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). **This means the Decision will be available to anyone with access to the internet.** However, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id.*

# I.    Procedural History

On August 2, 2016, Stephanie and Emmanuel Nwala ("petitioners") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*,[2] ("Vaccine Act" or " Vaccine Program") as parents and natural guardians of their minor son, C.N. Petitioners alleged that C.N. developed oculomotor never palsy of the right eye after receiving the hepatitis A, measles mumps rubella ("MMR"), and varicella vaccinations on January 15, 2014. Petition, ECF No. 1.

After filing several medical records, Petitioners' Exhibits ("Pet. Ex.") 1-15, ECF Nos. 5-7, 10, 16, petitioners filed an expert report from Dr. Joseph Rizzo III, M.D., along with his curriculum vitae, on October 25, 2017. Pet. Ex. 18-19, ECF No. 23. Petitioners filed supporting medical literature on October 26, 2017. Pet. Ex. 20-59, ECF Nos. 24-28.

Approximately six weeks later, on December 11, 2017, respondent filed a status report advising he was willing to engage in settlement discussions. Respondent's Status Report ("Resp. S.R."), ECF No. 29. After several months of negotiations, respondent filed a Stipulation for Award on October 15, 2018. Stipulation, ECF No. 39. The undersigned issued a Decision on the Stipulation the same day. Decision, ECF No. 40.

On November 26, 2018, petitioners filed a motion for attorneys' fees and costs ("Fees Motion"). Fees Motion, ECF No. 45. Petitioners requested attorneys' fees in the amount of $34,127.80 and costs in the amount of $11,362.88, for a total of $45,490.68. *Id.* at 2-3. Specifically, petitioner requested costs for their expert, Dr. Joseph Rizzo, in the amount of $9,912.50. *Id.*; Pet. Ex. 2 at 36. Dr. Rizzo billed 15.25 hours of work at a rate of $650.00 per hour. Fees Motion Ex. 2 at 36. Petitioners provided no documentation in support of Dr. Rizzo's requested hourly rate, even though the rate is $200.00 above the highest rate paid to a seasoned expert in the Vaccine Program. *See Green v. Sec'y of Health & Human Servs.*, 15-1447V, 2017 WL 6336776, at *4 (Fed. Cl. Spec. Mstr. Nov. 16, 2017); *Rosof v. Sec'y of Health & Human Servs.*, No. 14-766V, 2017 WL 1649802, at *4 (Fed. Cl. Spec. Mstr. Mar. 31, 2017). On November 29, 2018, respondent filed a response to petitioners' Fees Motion, stating, "Respondent is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case," and requesting that the undersigned "exercise her discretion and determine a reasonable award for attorneys' fees and costs." Response at 2-3, ECF No. 50. Petitioners filed their reply to respondent's response on the same day, reiterating their belief that the requested fees and costs were reasonable. Reply at 4-5, ECF No. 47.

On February 15, 2019, the undersigned issued a Decision on Attorneys' Fees and Costs in which Dr. Rizzo was awarded $450.00 per hour for his work in this case as petitioners filed no documentation that supported awarding Dr. Rizzo costs above the highest hourly rate awarded, despite his lack of experience in the Vaccine Program.

On March 8, 2019, petitioners filed a Motion for Reconsideration of Expert Rates ("Motion for Reconsideration") requesting that the Court reconsider its decision to decrease Dr. Rizzo's award amount. Motion for Reconsideration at 1, ECF No. 49. Along with their motion, petitioners provided curriculum vitaes of experts with comparable experience to Dr. Rizzo and their standard

---

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (1986). Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

hourly rates, along with Dr. Rizzo's standard hourly fee schedule for non-Vaccine Program cases. *See* Pet. Ex. 59-64. In their Motion for Reconsideration, petitioners argued that the reasonableness of Dr. Rizzo's proposed expert rate should be evaluated using five relevant factors set forth in *Sabella*. Motion for Reconsideration at 2 (citing *Sabella v. Secretary of Health and Human Services*, 86 Fed. Cl. 201 (Fed. Cl. 1992)). Petitioners then provided support for each of the above factors in favor of Dr. Rizzo's proposed hourly rate. Motion for Reconsideration at 2-6.

The undersigned withdrew her February 15, 2019 Decision on Attorneys' Fees and Costs in order to properly rule on petitioners' Motion for Reconsideration. Order, ECF No. 50. On March 18, 2019, the undersigned granted petitioners' Motion for Reconsideration, noting that whether petitioners would be entitled to the substantive relief requested in their motion would be determined after further analysis. *Id.* at 1. Respondent filed a response to petitioners' Motion for Reconsideration on March 22, 2019, in which he deferred to the undersigned's discretion to determine a reasonable hourly rate for petitioners' expert. Response at 1, ECF No. 52.

This matter is now ripe for determination.

## II.    Petitioners' Motion for Reconsideration

### A.  Legal Framework

Vaccine Rule 10(e) governs motions for reconsideration. It is within a special master's discretion to grant or deny the motion "in the interest of justice." Vaccine Rule 10(e)(3). Special masters have construed the "interest of justice" standard articulated in Vaccine Rule 10(e)(3) as a lesser standard than the showing of "manifest injustice" required by RCFC Rule 59(a). *See, e.g., R.K. v. Sec'y of Health and Human Servs.,* No. 03-632V, 2010 WL 5572074, at *5 (Fed. Cl. Spec. Mstr. Nov. 12, 2010). Moreover, Vaccine Rule 10 provides a special master with "significant discretion to determine in a particular case what result is in the interest of justice." *McAllister v. Sec'y of Health and Human Servs.,* No. 03-2476V, 2011 WL 6000606, at *1 (Fed. Cl. Spec. Mstr. Oct. 6, 2011). Additionally, special masters are not required to provide "a detailed order denying every argument for reconsideration." *Doe/17 v. Sec'y of Health and Human Servs.,* 84 Fed. Cl. 691, 704 n.18 (2008).

### B.  Discussion

Special masters have consistently declined to award more than $500.00 per hour to even the most experienced experts in the Vaccine Program. *See Green*, 2017 WL 6336776 at *4; *Rosof*, 2017 WL 1649802 at *4 ("[I]n the Vaccine Program, even the payment of $500.00 per hour is rare."). In the original decision on attorneys' fees and costs issued on February 15, 2019, the undersigned awarded petitioners' expert an hourly rate of $450.00, which was a $200.00 reduction of the $650.00 per hour petitioners originally requested in their Motion for Fees. This reduction was a direct result of petitioners' failure to provide corroborating documentation that supported awarding Dr. Rizzo more than any other expert in the Vaccine Program and Dr. Rizzo's lack of experience in the Program. Thus, Dr. Rizzo's requested overall award was reduced from $9,912.50 to $6,862.50.

In their Motion for Reconsideration, petitioners argued that when a special master determines the reasonableness of a proposed expert rate, she should consider five factors including: (1) the area of the expert's expertise; (2) the education and training required to provide necessary

insight; (3) the prevailing rates for other comparably respected available experts; (4) the nature, quality, and complexity of the information provided; and (5) the cost of living in the expert's geographic area. Motion for Reconsideration at 2 (citing *Sabella*, 86 Fed. Cl. at 206).[3]

Petitioners outlined Dr. Rizzo's impressive credentials including his double-board certification in Neurology/Psychiatry and Ophthalmology, his teaching position at Harvard Medical School, and his collaborative research at MIT. Motion for Reconsideration at 2. Petitioners also noted that Dr. Rizzo is the director of Neuro-Ophthalmology at the Massachusetts Eye and Ear Infirmary. *Id.*

Petitioners provided information regarding comparable experts and their hourly rates outside of the Vaccine Program. *Id.* at 3. Dr. Alan Weingarden, a Neuro-Ophthalmologist from the University of Minnesota receives an hourly rate of $750.00 for testifying as an expert witness, Dr. Timothy McCulley, a Neuro-Ophthalmologist from the Johns Hopkins Wilmer Eye Institute receives $750.00 per hour as an expert, Dr. Mark Kupersmith, a board-certified physician in Neurology and Ophthalmology from the Mount Sinai Icahn School of Medicine charges $750.00 per hour for testifying as an expert, Dr. Ken Gorson, a board-certified neurologist from Tufts School of Medicine receives an hourly rate of $750.00, and Dr. Wayne Cornblath, a physician who is board certified in Neurology and Ophthalmology from the University of Michigan's W.K. Kellogg Eye Center receives $900.00 per hour for testifying as an expert. *Id.* at 3-4. Petitioners argue the prevailing expert rate for an expert with Dr. Rizzo's qualifications is between $750.00 and $900.00 per hour. *Id.* at 4. In fact, Dr. Rizzo typically charges an hourly rate of $750.00 for testifying as an expert witness and had already agreed to reduce his hourly rate to the below-market level of $650.00 per hour for work performed in the Vaccine Program. *Id.* at 5.

Petitioners highlighted the work Dr. Rizzo performed in this case. *Id.* at 4. They noted Dr. Rizzo reviewed the medical records in this case, and over 40 publications related to C.N.'s eye issues. *Id.* Dr. Rizzo "provided an in-depth expert report explaining the cause and effect relationship between the vaccine and the development of a third cranial nerve palsy" and discussed each *Althen* prong in relationship to the case. *Id.* (citing Pet. Ex. 18). Petitioners noted that while respondent was initially hesitant to entertain settlement discussions, the parties were able to resolve the case after Dr. Rizzo's report was filed. *Id.* Moreover, petitioners pointed out that Dr. Rizzo's "high quality" expert reports prompted resolution of three other relevant cases. *Id.*; *see e.g.*, *McGehee v. Sec'y of Health & Human Servs.*, No. 14-1020 V, 2017 WL 750573 (Fed. Cl. Spec. Mstr. Jan. 26, 2017), *Beckner v. Sec'y of Health & Human Servs.*, No. 11-668V, 2015 WL 5461560 (Fed. Cl. Spec. Mstr. Aug. 24, 2015), *Chapnick v. Sec'y of Health & Human Servs.*, No. 10-210V, 2011 WL 2036966 (Fed. Cl. Spec. Mstr. Apr. 28, 2011).

Petitioners noted that Dr. Rizzo lives in Boston, MA and that this Court has previously determined Boston's cost of living is comparable to that of Washington, DC. Motion for Reconsideration at 5 (citing *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *10 (Fed. Cl. Spec. Mstr. Sept. 1, 2015)). Accordingly, petitioners argued that based on these factors, the requested costs for Dr. Rizzo's involvement in this matter are reasonable. Motion for Reconsideration at 5.

---

[3] Petitioners' counsel should have argued this in their initial Fees Motion and provided all of the corroborating information they provided in the Motion for Reconsideration so as to have avoided added drain on judicial time and resources.

Petitioners also included citations to cases in which special masters have previously awarded experts' costs at rates above the $500 per hour cap "where the overall amount requested [was] deemed reasonable." *Id.* at 7-8. Dr. Thomas Wright, a board-certified orthopedist, was awarded $600 per hour as his requested costs were deemed reasonable. *Montague v. Sec'y of Health & Human Servs.*, No. 16-0298V, 2018 WL 5284594, at *2 (Fed. Cl. Spec. Mstr. Sept. 19, 2018). Dr. Ram Ayyar, a neurologist, was awarded an hourly rate of $600 as his full costs were found reasonable. *Id.* at *3. Dr. Rohit Bakshi, a neuroradiologist, was awarded an hourly rate of $1,500. *Swintosky v. Sec'y of Health & Human Servs.*, No. 12-403V, 2017 WL 5899239 (Fed. Cl. Spec. Mstr. Nov. 6, 2017). Accordingly, petitioners argued Dr. Rizzo's requested cost is similarly reasonable and should be awarded. Motion for Reconsideration at 8.

Finally, petitioners argued it is in the interest of justice for the Court to reevaluate the general $500 cap on expert rates as it is difficult for petitioners to obtain well-qualified experts to testify in their cases when the experts will be paid below-market rates. *Id.* at 10-11.

Upon review of his certification and experience, it is clear Dr. Rizzo is highly qualified and specialized. His double board certification, employment, and teaching and researching positions make him one of only a handful of physicians with such specialized concentration, emphasized by the fact that petitioners could only provide examples of five experts whose credentials even come close to Dr. Rizzo's in his field. *See* Motion for Reconsideration at 3-4.

As pointed out by petitioners in their Motion for Reconsideration, it is increasingly difficult for parties to retain highly credentialed specialists to participate in vaccine cases when the experts will be paid below-market rates. Upon reflection, it is not the undersigned's intent to thwart attorneys' abilities to secure highly qualified experts when, as was the case in this matter, these experts may issue reports that lead to prompt resolution. The undersigned is not addressing Dr. Rizzo's specific hourly rate, but due to the quality of his work, his time invested in this case, and the quick resolution of this matter following the filing of his report, the undersigned concludes that Dr. Rizzo's overall bill of $9,912.50 is appropriate. *See McAllister*, 2011 WL 6000606 at *1.

Accordingly, in the interest of justice, petitioners will be awarded **$9,912.50** in costs for Dr. Rizzo's involvement in the case. Petitioners' additional requested costs will be discussed below.

## III.   Petitioners' Motion for Attorneys' Fees and Costs

### A.   Legal Framework

Because the undersigned's original Decision on Attorneys' Fees and Costs was withdrawn to properly rule on petitioners' Motion for Reconsideration, petitioners' application for attorneys' fees and additional costs will now be addressed. The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, the award of attorneys' fees is automatic. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). However, a petitioner need not prevail on entitlement to receive a fee award so long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed. § 15(e)(1). Here, because petitioners were compensated for their son's injury, they are entitled to a reasonable award of attorneys' fees and costs.

The Federal Circuit has endorsed the use of the lodestar approach to determine what constitutes "reasonable attorneys' fees" and "other costs" under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008). Under this approach, "an initial estimate of a reasonable attorneys' fees" is calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id.* at 1349-48 (quoting *Blum v. Stenson*, 465 U.S. 889, 888 (1984)). That product is then adjusted upward or downward based on other specific findings. *Id.*

Special masters have substantial discretion in awarding fees and costs and may adjust a request *sua sponte*, apart from objections raised by respondent and without providing petitioners with notice and opportunity to respond. *See Sabella*, 86 Fed. Cl. at 209. Special masters need not engage in a line-by-line analysis of petitioners' fee application when reducing fees. *See Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).

## B.  Discussion

### 1. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). This rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez* v. *Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a limited exception that provides for attorneys' fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id.* This is known as the *Davis County* exception. *See Hall* v. *Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (Fed. Cir. 2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist.* v. *U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. *See McCulloch* v. *Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has issued a fee schedule that updates the *McCulloch* rates to account for inflation in subsequent years.[4]

Petitioners requested the following hourly rates for their attorney, Ms. Diana Stadelnikas: $359.00 for work performed in 2016, $372.00 for work performed in 2017, and $396.00 for work performed in 2018. Fees Motion Ex. 1 at 19. Petitioners also requested hourly rates ranging from $95.00 to $148.00 for the work of several paralegals from 2016-2018. *Id.* Petitioners' requested hourly rates for both Ms. Stadelnikas and the paralegals who worked on this case are consistent with what Ms. Stadelnikas and Maglio paralegals have been previously awarded. Accordingly, no adjustments to the requested hourly rates are required.

---

[4] This fee schedule is posted on the court's website. *See* Office of Special Masters, *Attorneys' Forum Hourly Rate Fee Schedule: 2018*, http://www.uscfc.uscourts.gov/node/2914.

**2. Hours Reasonably Expended**

Once the applicable hourly rate is determined, it is applied to the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. The application for fees and costs must "sufficiently detail and explain the time billed so that a special master may determine . . . whether the amount requested is reasonable," and an award of attorneys' fees may be reduced for "vagueness" in billing. *J.W. ex rel. Wilson* v. *Sec'y of Health & Human Servs.*, No. 15-1551V, 2017 WL 877278, at *4 (Fed. Cl. Spec. Mstr. Feb. 10, 2017). Moreover, counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton* v. *Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley* v. *Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo* v. *Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016).

Furthermore, some tasks are generally compensated at a reduced rate. Attorneys who perform non-attorney-level work are compensated at a rate comparable to what would be paid to a paralegal. *See O'Neill* v. *Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott* v. *Sec'y of Health & Human Servs.*, No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). Finally, some tasks are never compensable. For instance, "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews* v. *Sec'y of Health & Human Servs.*, No 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). Additionally, clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26. Non-compensable clerical and secretarial tasks include making travel arrangements, reviewing and paying invoices, setting up meetings, organizing files, scheduling conference calls, and reviewing files for consistency. *J.W.*, 2017 WL 877278, at *3; *Barry v. Sec'y of Health & Human Servs.*, No. 12-039V, 2016 WL 6835542, at *4 (Fed. Cl. Spec. Mstr. Oct. 25, 2016).

The undersigned has reviewed the billing entries and finds the overall hours spent on this matter by Ms. Stadelnikas (67.8) to be reasonable. However, the hours billed by the paralegals in this matter require slight adjustment. There are several entries[5] in which the paralegals billed for administrative and/or clerical tasks, such as processing billing records and payments, organizing medical records, and preparing records for electronic filing. Additionally, there are several examples of multiple paralegals billing for review of the same document, such as status reports and scheduling orders. *See* Fees Motion Ex. 1 at 13-14. Frequently, Ms. Stadelnikas also billed time for review of the same documents, thus obviating the need for paralegal review.

---

[5] The following entries are examples and are not exhaustive; they merely provide a sampling

Accordingly, the undersigned will reduce the amount billed by the paralegals in this matter by 5%, resulting in a reduction in the amount of **$435.81**.[6] Petitioners' are therefore awarded **$33,691.99** in attorneys' fees.

### 3. Reasonable Costs

Like attorneys' fees, a request for reimbursement of attorneys' costs must be reasonable. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioners requested a total of $11,362.88 in costs. The majority of this amount ($9,912.50) is for the work of petitioners' expert, Dr. Rizzo, which was discussed above.

The remainder of petitioners' requested costs ($1,450.38) are for routine expenses in the Vaccine Program, such as the cost of obtaining medical records, medical literature, mailing costs, and the Court's filing fee. *See generally* Motion for Fees Ex. 2. The undersigned has reviewed the requested costs, aside from Dr. Rizzo's requested costs, for reasonableness and finds the requested amount reasonable and supported by adequate documentation. Petitioners are therefore entitled to attorneys' costs in the amount of **$1,450.38**, in addition to Dr. Rizzo's costs discussed above, **$9,912.50**, totaling **$11,362.88**.

### IV.      Conclusion

Based on the foregoing, the undersigned awards petitioners' counsel $**45,054.87**, representing, $33,691.99 in attorneys' fees, and $11,362.88 in costs, in the form of a check made payable jointly to **petitioners and their counsel, Diana Stadelnikas, Esq.** In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court shall enter judgment in accordance herein.[7]

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special Master

---

[6] The billing records indicated that paralegals billed 62.5 hours for a total of $8,716.20. Motion for Fees Ex. 1 at 19. Thus, $8,716.20 * 0.05 = $435.81.

[7] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).